**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

MICHAEL SENISCH, et al.,               No. 1:16-cv-47 (NLH/KMW)

              Plaintiffs,          **OPINION**

    v.

TRACTOR SUPPLY CO., et al.,

              Defendants.

---

**<u>APPEARANCES</u>:**

MICHAEL CHARLES SENISCH
38 PINDALE DRIVE
BRIDGETON, NJ 08302-4901
    Appearing pro se

JULIE ETTA SENISCH
38 PINDALE DRIVE
BRIDGETON, NJ 08302-4901
    Appearing pro se

CHRISTOPHER E. MARTIN
SETH M. GARROD
MORRISON MAHONEY LLP
WATERVIEW PLAZA
2001 U.S. HIGHWAY 46, SUITE 200
PARSIPPANY, NJ 07054
    On behalf of Defendants Tractor Supply Company, AON
    Corporation, and Gallagher Basset Services

LEWIS K. JACKSON
STYLIADES, JACKSON & DIMEO
10 LAKE CENTER EXECUTIVE PARK
401 ROUTE 73 NORTH
SUITE 310
MARLTON, NJ 08053
    On behalf of TKC XC LLC % The Keith Corporation

**HILLMAN**, District Judge

This is a negligence case arising from Plaintiff Michael Senisch's alleged injury at a Tractor Supply Company store when Mr. Senisch tripped over a hand truck outside the front entrance of the store. Defendants Tractor Supply Company ("Tractor Supply") and AON Corporation move for summary judgment.[1] This Opinion addresses both Defendants' Motion for Summary Judgment and Plaintiffs' Cross-Motion for Summary Judgment. For the reasons that follow, the Court will grant Defendants' motion and deny Plaintiffs' motion.

**I.**

The Court takes its facts from Defendants' Statement of Undisputed Material Facts.[2] On November 29, 2013 – "Black

---

[1] Defendants' moving papers also seem to move for summary judgment on behalf of Defendant Gallagher Bassett Services (GBS). However, this Court granted Defendant GBS's motion to dismiss on May 26, 2016. Accordingly, GBS is no longer a party to this action. Defendant TKC XC LLC ℅ The Keith Corporation has not yet moved for summary judgment. This Court refers to Tractor Supply and AON Corporation jointly as "Defendants" in this Opinion.

[2] Defendants note Plaintiffs did not respond to Defendants' Statement of Undisputed Material Facts and thus argue the facts should be deemed uncontested. The Court finds Plaintiffs did fail to comply with Local Civil Rule 56.1(a), which provides, in pertinent part:

> On motions for summary judgment, the movant shall furnish a statement which sets forth material facts as to which there does not exist a genuine issue . . . . The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material

Friday" following Thanksgiving Day – Plaintiffs arrived at the

Tractor Supply Company store in Vineland, New Jersey for the

first time to make a purchase.  Plaintiffs drove to the store,

parked their vehicle in the lot, and walked approximately thirty

feet to the sidewalk.

As they approached the store, Plaintiffs saw a shopping

cart with a sales circular in it.  Plaintiffs stopped to read

the circular with their backs to the store entrance.  After

reviewing the circular, Mr. Senisch testified he turned and

caught his left foot underneath a hand truck.[3]  At this time he

was about five feet from the front entrance of the store.  He

testified he flew over it crossways, lifting it approximately a

foot off the ground.  Neither plaintiff knows how the hand truck

_____

facts,   addressing   each   paragraph   of   the   movant's
statement, indicating agreement or disagreement . . . .
[A]ny  material  fact  not  disputed  shall  be  deemed
undisputed for purposes of the summary judgment motion.

While Plaintiffs have clearly violated an important local rule
of procedure which greatly facilitates the Court's consideration
of summary judgment motions, in light of their pro se status,
the Court will consider the record as a whole in determining
whether Plaintiffs have proffered sufficient evidence of
disputed issues of material fact to survive Defendants' summary
judgment motion.  The Court applies the principle that the non-
moving party's evidence "is to be believed and all justifiable
inferences are to be drawn in his favor."  Marino v. Indus.
Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

[3]    The hand trucks at the store, as well as shopping carts,
were available for use by patrons to carry items both inside and
outside the store.

got there or how long it had been there, but are sure the hand truck was not there when they approached the shopping cart to read the circular.

Plaintiffs' complaint was filed in New Jersey Superior Court on November 23, 2015.  It brings five counts against Defendants: (1) negligence, (2) res ipsa loquitur, (3) strict liability, (4) negligence per se, and (5) loss of consortium. Defendants removed this case to federal court on January 5, 2016.  Defendants moved for summary judgment on May 15, 2017. On June 16, 2017, Plaintiffs opposed the motion and filed a cross-motion for summary judgment solely on their count for strict liability.

**II.**

The Court first addresses its jurisdiction over this matter.  Defendants' Notice of Removal alleges as follows. Plaintiffs are citizens of New Jersey.  Defendant Tractor Supply is incorporated in Delaware and has its principal place of business in Tennessee, making it a citizen of both Delaware and Tennessee.  Defendant Gallagher Bassett Services is incorporated in Delaware and has its principal place of business in Illinois, making it a citizen of both Delaware and Illinois.  Defendant The Keith Corporation is both incorporated and has its principal place of business in North Carolina.  Defendant AON Corporation is both incorporated and has its principal place of business in

a foreign country.  As there is complete diversity between the
parties and the Notice of Removal pleads the amount in
controversy is in excess of $75,000, this Court has diversity
jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

### III.

`Summary judgment is appropriate where the Court is
satisfied that "'the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits if any,' . . . demonstrate the absence of a genuine
issue of material fact" and that the moving party is entitled to
a judgment as a matter of law.  <u>Celotex Corp. v. Catrett</u>, 477
U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56).

An issue is "genuine" if it is supported by evidence such
that a reasonable jury could return a verdict in the nonmoving
party's favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,
248 (1986).  A fact is "material" if, under the governing
substantive law, a dispute about the fact might affect the
outcome of the suit.  <u>Id.</u>  "In considering a motion for summary
judgment, a district court may not make credibility
determinations or engage in any weighing of the evidence;
instead, the non-moving party's evidence 'is to be believed and
all justifiable inferences are to be drawn in his favor.'"
<u>Marino</u>, 358 F.3d at 247 (citing <u>Anderson</u>, 477 U.S. at 255).

Initially, the moving party bears the burden of

demonstrating the absence of a genuine issue of material fact. _Celotex_, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."); _see_ _Singletary v. Pa. Dep't of Corr._, 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing" – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." (citing _Celotex_, 477 U.S. at 325)).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. _Celotex_, 477 U.S. at 324. A "party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . . pleading[s].'" _Saldana v. Kmart Corp._, 260 F.3d 228, 232 (3d Cir. 2001). For "the non-moving party[] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element

essential to that party's case, and on which that party will bear the burden of proof at trial.'" Cooper v. Sniezek, 418 F. App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at 322). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 257.

**IV.**

The Court first addresses Plaintiffs' arguments regarding Defendants' failure to provide discovery. By way of a March 1, 2017 Scheduling Order, Magistrate Judge Karen M. Williams set the discovery end date for April 30, 2017. Dispositive motions were to be filed by May 12, 2017, which was later extended to May 15, 2017. Accordingly, discovery has been closed for almost eight months now.

Several times in their opposition brief, Plaintiffs argue their "discovery requests were flatly denied due to 'orders' to the attending attorneys from Tractor Supply Company[]." Plaintiffs' brief also states "[t]hrough their first counsel who was [terminated] and now through their current second counsel, an entailed discovery was 'objected' to by consultation and authority of Tractor Supply Company's Corporate Claims Manager, Mr. Jason Keen." Plaintiffs are presumably referring to Defendants' responses to Plaintiffs' interrogatories, in which

there were many objections and in which several of Defendants'

initial responses began with "Upon advice of counsel,

objection."[4]

Plaintiffs have provided this Court with two versions of

Tractor Supply Company's responses to their interrogatories.  In

---

[4]     Plaintiffs' complaint of Defendants' lack of response to
discovery requests was made multiple times throughout their
brief.  While most complaints are vague, they all seem to relate
to the interrogatory responses:

- "Tractor Supply Company has never fulfilled supplying
  after ad nauseum efforts on the plaintiffs' parts a fully
  defined discovery response."

- "Also, Tractor Supply Company, as stated and documented
  in previous court records, has repetitively refused and
  ignored the court's demands of providing the plaintiffs
  of gaining a full and clear discovery and was denied
  that privilege directly from a Tractor Supply's
  Administrator, within a corporate executive capacity as
  ordered direction to their representing and answering
  attorneys."

- "This blatant refusal and 'stonewalling' of Tractor
  Supply Company Administration through their ordered
  outside counsel to continuously refused to prove full
  discovery to date, within itself should be a move to
  strike their summary judgment motions."

- "Tractor Supply Company's administration's reluctance to
  provide information pertaining to, but not limited to,
  Tractor Supply Company's operations, personnel,
  administrative policies, etc. within relevant discovery
  questions would grant the plaintiffs proper information
  to fully expound their case in a trial matter, if also
  not provide information covertly kept by the defendants
  to avoid any settlement(s) in this matter of their strict
  liability and mishandling of their standard of care in
  a commercial business setting to provide and make safe
  their premises for customer invitees."

the June 6, 2016 responses, nearly all of the responses begin with "Upon advice of counsel, objection."  The response to the first interrogatory also states that "[t]hese interrogatories were answered with the assistance of counsel" and identifies "Jason Keen, Tractor Supply Company Manager, Corporate Claims" as the individual responding to the interrogatories.

The April 27, 2017 responses do not state "Upon advice of counsel, objection," but merely object to certain interrogatories.  However, the response to the first interrogatory still identifies Jason Keen as the individual responding to the interrogatories.

Plaintiffs' specific objection to Tractor Supply's responses is unclear to the Court.  While Tractor Supply objected to many of the interrogatories, after objecting, Tractor Supply often supplied an answer or gave an explanation regarding the reason for the objection.  The Court also notes Plaintiffs did not file a motion to compel following receipt of the interrogatory responses.  Further, Plaintiffs have made no attempt to oppose Defendants' motion with a Federal Rule of Civil Procedure 56(f) affidavit setting forth reasons why they cannot present facts necessary to oppose the summary judgment motion.[5]  Plaintiffs further did not make such an argument in

---

[5]     Federal Rule of Civil Procedure 56(d) provides:

their brief, only stating that responses "would grant the plaintiffs proper information to fully expound their case in a trial matter."

In any event, the Court finds even if Plaintiffs had been supplied more complete answers to each of their interrogatories, it would not change this Court's determination that summary judgment must be granted in favor of Defendants in this case. Plaintiffs have failed to demonstrate a genuine issue of material fact regardless of Defendants' responses to interrogatories, and favorable responses to the interrogatories would not change the Court's determination.

Plaintiffs also commented on Defendants' failure to "furnish in its own motion . . . their personal store surveillance video, displaying preceding and post-events of the plaintiff's fall." Plaintiffs state in their brief that Defendants "conveniently and intentionally ignored" and "never supplied their Vineland store's video of the plaintiff's fall

---

If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

and injuries in this motion since it would be highly detrimental to not only their motion, but their case." However, Defendants have no obligation to provide all evidence in their possession. Rather, Defendants are obligated to provide only the evidence necessary to support their motion for summary judgment. Evidence that helps Plaintiffs' case, that is irrelevant, or that would be unnecessary or cumulative in light of other evidence to support the motion does not need to be presented to this Court.[6]

**V.**

The Court begins my noting it will grant summary judgment in favor of AON Corporation. Plaintiffs' complaint pleads AON Corporation is involved in Tractor Supply's "Risk, Reinsurance, Insurance, and Human Resources." However, the complaint, and Plaintiffs' brief, fail to specify any grounds for liability by AON Corporation. Accordingly, summary judgment will be granted in favor of AON Corporation.

This Court now addresses Tractor Supply's liability. Plaintiffs' complaint argues Tractor Supply is liable under theories of negligence, res ipsa loquitur, strict liability, and

---

[6]     Plaintiffs admit "Tractor Supply Company willingly provided the security camera video of the plaintiff's fall to the plaintiff's former attorney." Plaintiffs' sole complaint seems to be that this video was not provided to the Court with Defendants' motion, not that Plaintiffs were never provided with this video.

negligence per se.[7]  The Court addresses each in turn.

**A. Negligence**

"In New Jersey, . . . it is widely accepted that a
negligence cause of action requires the establishment of four
elements: (1) a duty of care, (2) a breach of that duty, (3)
actual and proximate causation, and (4) damages." <u>Jersey Cent.
Power & Light Co. v. Melcar Util. Co.</u>, 59 A.3d 561, 571 (N.J.
2013); <u>accord</u> <u>Lee v. Won Il Park</u>, No. 12-7437, 2016 WL 3041845,
at *3 (D.N.J. May 26, 2016).

"Business owners owe to invitees a duty of reasonable or
due care to provide a safe environment for doing that which is
within the scope of the invitation." <u>Nisivoccia v. Glass
Gardens, Inc.</u>, 818 A.2d 314, 316 (N.J. 2003) (citing <u>Hopkins v.
Fox & Lazo Realtors</u>, 625 A.2d 1110 (N.J. 1993); Restatement
(Second) of Torts § 343 (1965)).  "The duty of due care requires
a business owner to discover and eliminate dangerous conditions,
to maintain the premises in safe condition, and to avoid
creating conditions that would render the premises unsafe."  <u>Id.</u>
(citing <u>O'Shea v. K. Mart Corp.</u>, 701 A.2d 475 (N.J. Super. Ct.
App. Div. 1997)).

> Ordinarily, an injured plaintiff asserting a breach of
> that duty must prove, as an element of the cause of
> action, that the defendant had actual or constructive
> knowledge of the dangerous condition that caused the

---

[7]    Plaintiffs also bring a derivative claim for loss of
consortium.

accident. Equitable considerations have, however, motivated [the New Jersey Supreme Court] to relieve the plaintiff of proof of that element in circumstances in which, as a matter of probability, a dangerous condition is likely to occur as the result of the nature of the business, the property's condition, or a demonstrable pattern of conduct or incidents. In those circumstances, [the New Jersey Supreme Court] ha[s] accorded the plaintiff an inference of negligence, imposing on the defendant the obligation to come forward with rebutting proof that it had taken prudent and reasonable steps to avoid the potential hazard.

Id. (citation omitted) (citing Brown v. Racquet Club of Bricktown, 471 A.2d 25, 29 (N.J. 1984)); accord Bozza v. Vornado, Inc., 200 A.2d 777, 779-80 (N.J. 1964).

"Overall the fair probability is that defendant did less than its duty demanded, in one respect or another." Wollerman v. Grand Union Stores, Inc., 221 A.2d 513, 514 (N.J. 1966). "At least the probability is sufficient to permit such an inference in the absence of evidence that defendant did all that a reasonably prudent man would do in the light of the risk of injury his operation entailed." Id. at 514-15. Plaintiffs claim this is a mode-of-operation case in which they need not prove actual or constructive notice. Accordingly, this Court must determine whether this is an appropriate case to apply the mode-of-operation doctrine.

"[I]n all of its prior mode-of-operation cases, [the New Jersey Supreme Court] has emphasized the self-service nature of

the defendant's business." Prioleau v. Ky. Fried Chicken, Inc.,

122 A.3d 328, 337 (N.J. 2015).

> [T]he mode-of-operation doctrine has never been expanded
> beyond the self-service setting, in which customers
> independently handle merchandise without the assistance
> of employees or may come into direct contact with product
> displays, shelving, packaging, and other aspects of the
> facility that may present a risk. The distinction drawn
> by these cases is sensible and practical. When a
> business permits its customers to handle products and
> equipment, unsupervised by employees, it increases the
> risk that a dangerous condition will go undetected and
> that patrons will be injured. Thus, the mode-of-
> operation rule is not a general rule of premises
> liability, but a special application of foreseeability
> principles in recognition of the extraordinary risks
> that arise when a defendant chooses a customer self-
> service business model.

Id. at 337-38 (citations omitted).

New Jersey courts "have extended the mode-of-operation

doctrine to include self-service businesses other than

cafeterias and supermarkets." Arroyo v. Durling Realty, LLC, 78

A.3d 584, 588 (N.J. Super. Ct. App. Div. 2013). "The unifying

factor, however, is a mode of operation designed to allow the

patron to select and remove the merchandise from the premises

without intervention from any employee of the storekeeper."

Craggan v. Ikea U.S., 752 A.2d 819, 825 (N.J. Super. Ct. App.

Div. 2000).

Plaintiffs' brief states "Tractor Supply Company allows,

permits, and by the 'self-service, mode of operation' nature of

their business to encourage customer invitees without any

assistance from store personnel to hand-pick either a shopping cart, mid-sized cart, or a large, flatbed hand truck to be freely wheeled around the store." Plaintiffs argue patrons are then "permitted to continue with the shopping carts/hand trucks about the store and personally load items to purchase onto the shopping carts/hand trucks" before "wheel[ing] the shopping carts/hand trucks to transport their bought items to their personal vehicles in the private parking lot." Plaintiffs conclude:

> Since there is no "cart corral" or similar safe device storage in Tractor Supply Company-Vineland's parking lot and the customer invitee is still not under any supervision of the store's employees, they are permitted to leave the shopping carts/hand trucks wherever they wish. This factor fully completes the justification a truly risky "self-service, mode-of-operation" business.

While there is certainly a self-service component to Tractor Supply's business, this Court is unable to conclude there existed "a dangerous condition . . . likely to occur as the result of the nature of the business, the property's condition, or a demonstrable pattern of conduct or incidents, Nisivoccia, 818 A.2d at 316, or that the conditions identified in the store "present[ed] a risk," Prioleau, 122 A.3d at 338.

This case can be contrasted to Wollerman, where the plaintiff slipped and fell after stepping on a string bean at the defendant's supermarket. 221 A.2d at 514. The Wollerman

court found "[w]hen greens are sold from open bins on a self-service basis, there is the likelihood that some will fall or be dropped on the floor.  Id.  "If the operator chooses to sell in this way, he must do what is reasonably necessary to protect the customer from the risk of injury that mode of operation is likely to generate . . . ."  Id.

Similarly, this case is distinguishable from Nisivoccia, where the plaintiff slipped and fell after stepping on a grape at the defendant's supermarket.  818 A.2d at 315-16.  The Nisivoccia court stated: "A location within a store when a customer handles loose items during the process of selection and bagging from an open display obviously is a self-service area.  A mode-of-operation charge is appropriate when loose items that are reasonably likely to fall to the ground during customer or employee handling would create a dangerous condition."  Id. at 317.  The Court found negligence was "inferred requiring the store to come forward and produce evidence of its due care."  Id. at 318.

Wollerman and Nisivoccia, unlike this case, involved the nature of the defendant's business creating a risk that small objects that patrons could slip on would end up on the floor of a store.  In this case, the chance that a patron would leave a hand truck in an area where another patron will walk does not create a comparable risk.

Plaintiffs' complaint describes the hand truck as "large."
In Mr. Senisch's deposition, he described it as follows:

> A.   Large.  Approximately about, I would say, 3 foot,
> maybe 4 foot by about 5 or – 5 foot length.  Handle
> pretty much came up to about, I would say, here
> (Indicating.)
>
> Q.   You're indicating just below your, you know, breast
> line?
>
> A.   Actually, more toward – between the umbilicus and
> the ribcage.  So we're talking probably about maybe
> – the handle, maybe 4 feet above the ground.  And
> that's not – it's less than what it would be
> attached.  No markings on the cart, no reflective
> markings, the dark gray color.  Like I said, it was
> very difficult to see and, one, a cloudy day at
> dusk with no outside lighting and in the position
> it was.

Unlike a string bean or grape, a patron is unlikely to "slip" on
a hand truck.  While Mr. Senisch argues he tripped on the hand
truck, the Court does not find this to be an incident "likely to
occur" and does not find the providing of hand trucks to be a
dangerous condition.

The Court finds Znoski v. Shop-Rite Supermarkets, Inc., 300
A.2d 164 (N.J. Super. Ct. App. Div. 1973) and Carney v. Payless
Shoesource, Inc., No. 2680-07, 2009 WL 425822 (N.J. Super. Ct.
App. Div. Feb. 24, 2009) persuasive in this case.[8]  In Znoski,
the plaintiff sustained injuries after being hit by a shopping
cart by a child.  300 A.2d at 165.  The New Jersey Superior

---

[8]   Defendants heavily rely on Znoski in their brief in support
of their summary judgment motion.

Court, Appellate Division ("Appellate Division") found as

follows:

> Plaintiff produced no expert witnesses to prove that the entrance and exit doors were improp[e]rly constructed or designed for the anticipated use by patrons with shopping carts. No expert proof was offered to show that the sidewalk in front of and surrounding the doors, or the wooden curbing abutting the end of the sidewalk, was improperly constructed, designed or maintained for the reasonably safe use by patrons; or that proper design required some form of railing or divider at or near the wooden curb. No proof was offered to show that the use of shopping carts in the area around the doors created a foreseeable danger or hazard requiring special precautions to be taken by Shop-Rite. Nor was proof offered to show that Shop-Rite had actual or constructive knowledge that patrons, or other third-parties, used the carts for any purpose or in any manner other than those for which they were designed.

Id. at 165-66.

Specifically addressing the mode-of-operation doctrine, the

Appellate Division found:

> We are unable to say that a substantial risk of injury is implicit, or inherent, in the furnishing of shopping carts to patrons by a store proprietor. Shopping carts are not dangerous instrumentalities, and they are uniquely suitable for the purpose for which furnished. Shop-Rite was under a legal duty of exercising ordinary care to furnish a reasonably safe place and safe equipment for its patrons consistent with its operation and the scope of its invitation. It is not an insurer of the safety of its patrons. The issue is not merely whether it was foreseeable that patrons, or other third parties, would negligently or intentionally misuse shopping carts, but whether a duty exists to take measures to guard against such happenings. . . .
> Every human activity involves some risk of harm, but the reasonable probability of having other than a minor accident from the use of carts in Shop-Rite's operation does not give rise to a duty to take measures

> against it. So viewed, we find that plaintiff has failed
> to carry the burden of showing a breach of duty on Shop-
> Rite's part in furnishing its patrons with carts under
> the circumstances here existing. In fact, it is
> difficult to visualize how an incident such as here
> involved could have been prevented even if reasonable
> precautions had been taken.

Id. at 166-67.

Similar to shopping carts, hand trucks are not "dangerous instrumentalities" and they are similarly "uniquely suitable for the purpose for which furnished." Also similar to Znoski, additional precautions by Tractor Supply are not guaranteed to markedly decrease any risk.[9]

In Carney, the plaintiff tripped over a two-foot tall by two-foot wide shoe bench at a Payless shoe store. 2009 WL 425822, at *1. The plaintiff "contend[ed] that she [wa]s entitled to an inference of negligence because the store knew or should have known that their use of the portable shoe benches created a dangerous condition," thus invoking the mode-of-operation doctrine. Id. The Appellate Division found:

> The two-foot by two-foot portable shoe benches for
> use by customers who try on merchandise do not raise a

---

[9]    While Mr. and Mrs. Senisch's deposition testimonies conflict, at most, Plaintiffs were reading the circular in the shopping cart for five minutes. Even if Defendants took additional precautions, such as monitoring that area for hand trucks that might have been abandoned in an area trafficked by patrons, that would not have necessarily prevented Mr. Senisch's injury given how quickly the hand truck appeared. Further, if Defendants were to provide a location for the return of the hand trucks, there is no guarantee that this would effectively result in all hand trucks being returned to that location.

substantial risk inherent in defendant's mode of doing business.  Any reasonably prudent person would observe, in light of the dimensions of the benches, their presence in his or her lane of travel.

No expert testimony was produced demonstrating that use of the two-foot by two-foot portable shoe benches created a dangerous condition or was contrary to industry standards.  There is simply no evidence in this record establishing either ordinary negligence on the part of defendant or that plaintiff is entitled to any inference based on the mode-of-operation doctrine.

. . . .

Similarly, the use of the shoe benches did involve some risk of harm, but not to an extent that a duty to take measures against the harm was created.

Id. at *2.

The court distinguished the case from the more common "spillage cases," finding Znoski more analogous.  Similar to a shoe bench, a hand truck is a large object, as described by Plaintiffs.  A reasonably prudent person would be able to observe a hand truck if one were left in his or her lane of travel.  Accordingly, this Court finds Plaintiffs have not shown there to be a dangerous condition and thus this Court will not apply the mode-of-operation doctrine to this case.  As Plaintiffs have not otherwise shown actual or constructive knowledge, their negligence claim cannot survive summary judgment.

The Court notes that these Plaintiffs are pro se, and that "pro se pleadings and filings must be 'construed liberally.'" Bank of Nova Scotia v. Ross, No. 2010-118, 2012 WL 4854776, at

*3 (D.V.I. Oct. 12, 2012).  However, "the same summary judgment

standard applies to pro se litigants."  Id.  "Proceeding pro se

does not otherwise relieve a litigant of the usual requirements

of summary judgment, and a pro se party's bald assertions

unsupported by evidence, are insufficient to overcome a motion

for summary judgment."  Rodriguez v. Hahn, 209 F. Supp. 2d 344,

348 (S.D.N.Y. 2002) (quoting Parkinson v. Goord, 116 F. Supp. 2d

390, 393 (W.D.N.Y. 2000)).  Accordingly, Plaintiffs' negligence

claim must be dismissed.  The Court now turns to Plaintiffs'

remaining theories of liability.[10]

## B. Res Ipsa Loquitur

"In New Jersey, res ipsa loquitur 'is a principle which

permits, but does not compel, a jury to infer negligence from

the mere happening of a particular event.'"  Denisco v.

Boardwalk Regency Corp., No. 10-3612, 2013 WL 179484, at *11

(D.N.J. Jan. 16, 2013) (quoting Tierney ex rel. Tierney v. St.

Michael's Med. Ctr., 518 A.2d 242, 244 (N.J. Super. Ct. App.

Div. 1986)).

> [T]here are three fundamental predicates for the
> application of the doctrine, which are that "(a) the

---

[10]    The Court finds Defendants' brief to be conclusory and
unhelpful regarding Counts II, III, IV, and V of the complaint.
Defendants' argument regarding these four counts consists of a
mere half page of their brief.  While the Court independently
assesses the merits of each count and agrees that the remaining
counts lack merit, Defendants are reminded of their obligation
to properly support their summary judgment motion with adequate
briefing.

> occurrence itself ordinarily bespeaks negligence; (b) the instrumentality was within the defendant's exclusive control; and (c) there is no indication in the circumstances that the injury was the result of the plaintiff's own voluntary act or neglect."

Khan v. Singh, 975 A.2d 389, 394-95 (N.J. 2009) (quoting Bornstein v. Metro. Bottling Co., 139 A.2d 404, 408 (N.J. 1958)).

Plaintiffs claim res ipsa loquitur is applicable here because "[e]xperiencing unforeseen injuries from an obstruction while traversing a business property does not occur in the absence of a business' negligence." The Court does not find this allegation allows for the application of res ipsa loquitur. Indeed, every day, individuals arrive on a "business property" and unexpectedly slip, trip, or fall through no fault of the particular store.

"Whether an occurrence 'ordinarily bespeaks negligence' depends on the balance of probabilities being in favor of negligence." Buckelew v. Grossbard, 435 A.2d 1150, 1157 (N.J. 1981). "Hence, res ipsa is available if it is more probable than not that the defendant has been negligent." Myrlak v. Port Auth. of N.Y. & N.J., 723 A.2d 45, 51 (N.J. 1999). The Court finds this is not a case where it is more probable than not Tractor Supply has been negligent. It appears as equally possible that Mr. Senisch's injuries were a result of his own negligence in not observing the hand truck before the collision

22

or that the injury resulted from the negligence of a third party who placed the hand truck next to the Plaintiff.

The Supreme Court of New Jersey has applied this doctrine to cases "including the collapse of a stairway in a new building on which a plaintiff was standing, or where a soda bottle explodes without warning, . . . or where an automatic door at a supermarket suddenly swings backwards." Khan, 975 A.2d at 395 (citations omitted) (first citing Brown, 471 A.2d 25; then citing Bornstein, 139 A.2d 404; and then citing Jerista v. Murray, 883 A.2d 350 (2005)). These instances are distinguishable from the case at hand. It is difficult to see how the collapse of a stairway could be caused by an individual standing on it, or who else would be responsible for such an incident other than the owner. Similarly, it is difficult to find how an individual could be at fault for an automatic door swinging backwards at a store. It seems clear that such an incident would be traceable to the owner there as well. In this case, however, it is clear there is a possibility Mr. Senisch's neglect could have contributed to the accident rendering it not obvious that Tractor Supply must have been at fault.

Further, the Court does not find the instrumentality was within Defendants' exclusive control. Other patrons, no matter what Defendants did (short of not providing or allowing hand trucks), also controlled the placement of the hand trucks.

Accordingly, the Court does not find res ipsa loquitur applicable to this case.

## C. Strict Liability

Plaintiffs also premise liability on a strict liability theory for Defendants' alleged engagement in an "ultra-hazardous activity."[11]   "[T]he Supreme Court of New Jersey adopted the analysis of the Restatement (Second) of the Law of Torts (1977) . . . to determine whether a defendant should be strictly liable for an 'abnormally dangerous' activity."   In re Complaint of Weeks Marine, Inc., No. 04-494, 2005 WL 2290283, at *4 (D.N.J. Sept. 20, 2005) (quoting State, Dep't of Envtl. Prot. v. Ventron Corp., 468 A.2d 150, 157 (1983)).

> In determining whether an activity is abnormally dangerous, New Jersey courts have adopted a six-part test.   Courts must consider: (a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes.

Bonnieview Homeowners Ass'n, LLC v. Woodmont Builders, L.L.C.,

---

[11]   New Jersey has replaced the term "ultra-hazardous" with "abnormally dangerous."   See T & E Indus., Inc. v. Safety Light Corp., 546 A.2d 570, 575 (N.J. Super. Ct. App. Div. 1988) ("The [Supreme Court] retained the doctrine of absolute liability; however, it used the description 'abnormally dangerous' for 'ultra-hazardous' in describing the activity for which that doctrine will apply.").

655 F. Supp. 2d 473, 519 (D.N.J. 2009) (quoting T & E Indus., Inc. v. Safety Light Corp., 587 A.2d 1249, 1259 (D.N.J. 1991)).

"All of the factors are to be considered . . . ." Id. While "no single factor in § 520 alone is necessarily sufficient for the conclusion that an activity is abnormally dangerous," a court must ordinarily "find that several factors apply in order to impose strict liability." Id. "Applying the Restatement multi-faceted test, courts agree that the question of whether a specific activity is abnormally dangerous and, thus, gives rise to strict tort liability, is a question of law for the court to resolve." Ely v. Cabot Oil & Gas Corp., 38 F. Supp. 3d 518, 529 (M.D. Pa. 2014).

Plaintiffs allege Defendants' "ultra-hazardous activity" was "[i]nviting a customer invitee onto TSC's property when there is no secure proper placement location and/or exacting regulation of heavy and dangerously misplaced, 'wheeled merchandise carriers.'" The Court does not find this constitutes an abnormally dangerous activity such that strict liability would apply. First, allowing customers to use hand trucks does not carry a high degree of harm. Second, any harm that could result is unlikely to be great. While the Court does not discount the severity of Mr. Senisch's injuries, the Court does not find these injuries typical of the harm that would likely result from tripping on a hand truck.

Significantly, the Court finds that any risk posed by the hand trucks can be easily eliminated with reasonable care. As stated earlier, Plaintiffs recognize that these hand trucks are large objects. An individual is not unable to eliminate the risk by keeping an eye out for abandoned hand trucks. Further, providing hand trucks, carts, or other equipment to facilitate patrons at a store moving merchandise from the store into their vehicles is common. There is hardly a commercial store that does not provide some type of equipment for such purpose, whether it be shopping carts, baskets, hand trucks, or platform trucks. Providing this equipment for such uses at commercial establishments is appropriate, particularly at a hardware store where the merchandise is often large and difficult to carry. Finally, given this Court's finding of a lack of dangerous attributes, the Court finds the value to the community outweighs such minimal dangerous attributes, as these hand trucks clearly provide a benefit to patrons who require aid in transporting merchandise to their vehicles. Accordingly, the Court does not find Tractor Supply engaged in an abnormally dangerous activity, and the Court will not apply strict liability in this case.

Based on this conclusion, the Court will also deny Plaintiffs' cross-motion for summary judgment.

### D. Negligence per se

"Under New Jersey law, a negligence per se claim is

supported by a violation of a statute or regulation when said statute or regulation 'serve[s] to impose direct tort liability.'" Lee, 2016 WL 3041845, at *2 (alteration in original) (quoting Chelsea Check Cashing, L.P. v. Toub, No. 02-5557, 2006 WL 54303, at *3 (D.N.J. Jan. 9, 2006)). To begin the analysis of a negligence per se claim, "the Court must first look to the statute or regulation that was violated." Id.

In their complaint, Plaintiffs plead negligence per se as follows:

> The Defendants' actions were in direct violation of The International Building Code and N.J.A.C. Uniform Fire Safety Act 52:27D-192 et. seq. as judged as violated by Vineland Fire Prevention Bureau officials as a repeat offense by a $1000.00 fine for obstruction of entrance and exit "passage and pathways" for protection of the general public; the Defendants' action were in direct violation of customary practices of other similar retail businesses use of "Cart Corals" (storage areas or by any other name given) in the vicinity of the Vineland TSC store and, therefore, Defendants' actions constitute negligence per se.[12]

---

[12] Plaintiffs' brief adds little in terms of elaborating on their negligence per se claim:

> Pertaining to Negligence Per Se, the plaintiffs attest that the obstruction of the hand truck which caused injury was situated within the ingree/egress of the entranceway to the store. A violation of an accessible means of egress (is thus, in turns a means of ingress) must be provided according to the International Building Code (IBC). Issued by the International Code Council (ICC), A means of egress/(ingress) is an unobstructed path to leave/(or enter) buildings, structures, and spaces and also listed in Exhibit P-8 an OPRA acquire fine to Tractor Supply-Vineland.
> Plaintiffs have provided in discovery to Tractor Supply OPRA from the State of New Jersey and Vineland's

Accordingly, Plaintiffs allege three bases for their negligence per se claim: (1) the International Building Code; (2) N.J.S.A. 52:27D-192, and (3) customary practices.

"Ordinarily, the determination that a party has violated 'a statutory duty of care is not conclusive on the issue of negligence, it is a circumstance which the jury should consider in assessing liability.'" Eaton v. Eaton, 575 A.2d 858, 866 (N.J. 1990) (quoting Waterson v. Gen. Motors, 544 A.2d 357, 370 (1988)). "The reason is that statutes rarely define a standard of conduct in the language of common-law negligence. Hence, proof of a bare violation of a statutory duty ordinarily is not the same as proof of negligence." Id. However, "[w]hen . . . a statute specifically incorporates a common-law standard of care, a jury finding of a statutory violation constitutes a finding of negligence." Id.

Beginning with the alleged violation of the International Building Code, the Court notes New Jersey has adopted the International Building Code as a sub-code within the UCC. MNR Clat, LLC v. Township of Montclair, No. 499-13, 2014 WL 7466551,

---

Fire Marshall documenting fires incurred as continued negligent to strict liability of their customer invitees pertaining to blockage of Fire Exits and Locked Gated Exit Ways which showed a consistent neglect and negligence of a strict liability for customer invitees even way after the plaintiff's injury.

at *3 (N.J. Super. Ct. App. Div. Jan. 6, 2015); accord Nicolas v. Riverview Towers Apartment Corp., No. 5366-12, 2014 WL 7797081, at *1 (N.J. Super. Ct. App. Div. Feb. 12, 2015). However, "under New Jersey law, violations of administrative regulations are . . . not proof of negligence per se." Cruz v. ATCO Raceway, Inc., No. 12-5143, 2015 WL 4040619, at *5 n.6 (D.N.J. July 1, 2015); accord Bedford v. Riello, 920 A.2d 693, 700 (N.J. Super. Ct. App. Div. Apr. 18, 2007) ("[V]iolation of an administrative code provision, while not negligence per se, [is] evidence of negligence."). Accordingly, any alleged violation of the International Building Code, as adopted in the New Jersey administrative code, does not constitute negligence per se.

Plaintiffs further plead a violation of the Uniform Fire Safety Act, N.J.S.A. 52:27D-192. However, Plaintiffs fail to tell this Court specifically how this statute was violated. Further, no evidence was proffered regarding a violation of this statute other than a hand truck located at the entrance of the store. This Court can also discern no common law standard of care provided in the Uniform Fire Safety Act that would apply to this matter. In any event, Mr. Senisch was not injured in a fire. The statute does not intend to protect an individual from tripping over an object in the ordinary course of a business day. Accordingly, the alleged violation of the Uniform Fire

Safety Act similarly cannot constitute negligence per se.

Plaintiffs also state in their complaint that "Defendants' action[s] were in direct violation of customary practices of other similar retail businesses use of 'Cart Corals' . . . in the vicinity of the Vineland TSC store and, therefore, Defendants' actions constitute negligence per se."  An industry "custom practice" is similarly insufficient for negligence per se.

## VI.

As Plaintiffs' negligence, res ipsa loquitur, strict liability, and negligence per se counts do not survive summary judgment, the derivative loss of consortium claim similarly must be dismissed.  See Thompson v. AT&T Corp., 371 F. Supp. 2d 661, 685 (W.D. Pa. 2005) ("Claims for loss of consortium are derivative of the spouse's claims and to the extent that such claims are dismissed, so must the claims for consortium be dismissed.").

An appropriate Order will be entered.


Date:  January 8, 2018              s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.